## 21162

JKT COMPANY, INC., Plaintiff-Respondent, v. Grady HARDWICK, d/b/a Hardwick Roofing & Sheet Metal Company, Easley Lumber Company, Celotex Corporation, John H. Alschuler, and John H. Alschuler, Inc., Defendants, of whom Grady Hardwick, d/b/a Hardwick Roofing & Sheet Metal Company is a Defendant-Respondent, and Easley Lumber Company and Celotex Corporation are Defendants-Appellants.

(265 S. E. (2d) 510)

*Burroughs, Green, Sasser, Hudson & Bruner,* Conway, *for defendant-appellant Celotex Corp.*

*Weinberg, Warner, Brown & McDougall,* Sumter, *for defendant-appellant Easley Lumber Co.*

*Jenrette, Wheless, McInnis & Breeden,* North Myrtle Beach, *for defendant-respondent Hardwick.*

*Nettles, Smith, Turbeville & Reddeck,* Lake City; and *Thompson, Henry & Lovelace,* Conway, *for plaintiff-respondent JKT Co., Inc.*

February 27, 1980.

NESS, Justice:

Respondent JKT Company, Inc., owner of a wholesale grocery warehouse with an allegedly defective roof brought suit against Alschuler, the architect; Easley Lumber Company, the general contractor; Grady Hardwick, the roofing subcontractor; and, Celotex Corporation,[1] the manufacturer-seller of the roofing material. The architect was granted a non-suit and is not a party to this appeal.

The jury returned a verdict against appellants Celotex and Easley Lumber Company in the sum of $150,000.00. We affirm as to Celotex and reverse as to Easley.

Easley contracted with W. Lee Flowers and Company in 1970 to construct the warehouse. After construction, the warehouse was conveyed to respondent JKT Company, Inc., and within a few years, the roof began to blister. When the blisters cracked, the roof leaked. At the time this action was commenced, blisters covered 75% of the roof's surface.

JKT Company alleged negligence, wilfulness, and breach of implied and express warranties against Easley and Hardwick in the construction of the roof. Its complaint against Celotex alleged negligence, wilfulness, and breach of implied warranties in the manufacture and sale of the roofing materials.

Celotex initially asserts there was no admissible evidence from which the jury could infer the roofing materials were defective. We disagreee.

Respondent's expert, F. Lee Russell, testified that from his observation and examination of the roofing material, the blisters were caused by excess moisture present in the materials when they arrived at the job site. This testimony is sufficient to support the jury's conclusion that the materials were defective.

---

[1] Celotex Corporation is the successor of Barrett Division of Allied Chemical Corporation, the manufacturer-seller of the roofing material.

Celotex next argues there was no admissible evidence from which the inference could be drawn that it knew or should have known that the materials were defective. This is without merit.

The witness Russell worked for Barrett, the corporate predecessor of Celotex, from the mid-1950's through the mid-1960's. He testified that in 1966, the plant producing the material also produced two substantially identical shipments which were rejected due to moisture content.

Evidence of similar accidents, transactions or happenings is admissible where there is some special relation between them which would tend to prove or disprove some fact in dispute. *Brewer v. Morris*, 269 S. C. 607, 610, 239 S. E. (2d) 318 (1977). Here, Russell stated the manufacturing process used in the two rejected shipments was identical with the process used to produce the materials at issue.

In determining whether the defect was foreseeable by Celotex, prior complaints of similar defects are relevant. *Gantt v. Columbia Coca-Cola Bottling Company*, 193 S. C. 51, 7 S. E. (2d) 641 (1940); *Gardner v. Q.H.S., Inc.*, 448 F. 2d 238 (4th Cir. 1971). We conclude Russell's testimony was admissible and sufficient for the jury to reasonably infer that Celotex should have known the materials were defective.

Celotex next asserts any implied warranty of merchantability with which it sold the material did not extend to respondent, a corporation. We disagree.

Section 36-2-318, Code of Laws of South Carolina (1976), provides in part:

"A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty."

Celotex contends the term "natural" describing the persons to whom implied warranties extend under this section, excludes respondent, a corporation, from its scope. This construction is untenable.

Celotex maintains section 36-2-318 dispensed with the privity requirement only as to "natural persons." While this section refers only to "natural persons," we do not believe the doctrine of privity in South Carolina has sufficient vitality to permit its resuscitation by Celotex as a bar to JKT's recovery.

The erosion of the concept of privity has been a legal phenomenon for more than a decade,[2] and this Court has not been reluctant to contribute to its demise. In *Gasque v. Eagle Machine Co. Limited, et al.,* 270 S. C. 499, 243 S. E. (2d) 831 (1978), we recognized that lack of privity would not defeat a remote vendee's breach of warranty action seeking damages for purely economic loss. We see no sound reason, in jurisprudence or logic, why the language of Code § 36-2-318 should be taken as the outer boundary of the abolition of privity, or why the developing case law should be inhibited thereby. See Restatement of Torts 2d, Section 402A; 63 Am. Jur. 2d, Products Liability, Section 159, page 163; *Springfield v. Williams Plumbing Supply Co., Inc.,* 249 S. C. 130, 153 S. E. (2d) 184 (1967). According to White & Summers, Uniform Commercial Code, § 11-3, p. 330-331 (1972):

"Either on strict tort or warranty theory, most courts have gone well beyond 2-318, and in a majority of states it stands like the Maginot Line, a carefully and conservatively constructed provision largely irrelevant to the battle ultimately fought."

---

[2] *Monsanto Co. v. Alden Leeds, Inc., et al.,* 130 N. J. Super. 90, 326 A. (2) 90 (1974); *Iacono v. Anderson Concrete Corporation,* 42 Ohio St. (2d) 88, 326 N. E. (2d) 267 (1975); *Lynne Carol Fashions, Inc. v. Cranston Print Works Co., Inc.,* 453 F. (2d) 1177 (3rd Cir. 1972); *Nobility Homes of Texas, Inc. v. Shivers,* 557 S. W. (2d) 77 (Tex. 1977); *Veretto v. Eli Lilly & Co.,* 369 F. Supp. 1254 (D. C. Tex. 1974).

Also see 16 A. L. R. 3d 683 at 699 and the 1979 supplement, page 14 citing cases from states adopting the new trend.[3]

South Carolina is in the vanguard in permitting a plaintiff to recover economic loss from a seller with whom he did not deal and who made no express warranties to him. See White & Summers, supra, at page 333. We can perceive no valid reason why we should erect an artificial line distinguishing between consumer plaintiffs and corporate plaintiffs on the issue of privity. It would be patently unfair to allow a manufacturer of a defective product to escape liability via privity when the plaintiff is an individual, so it is unfair to disallow recovery when a corporation brings suit. There is no justifiable reason why an innocent corporate consumer should be denied recovery when a manufacturer places a defective article into commerce. The same rule should apply to corporate transactions as to consumer purchases.

Celotex sold the materials with full knowledge of their intended use. A Celotex representative went to Hardwick's place of business and assisted him in selecting the materials and placing the order. Under these circumstances, we can see no reason why the mere transfer of the warehouse to a corporation owned and controlled by the members of the partnership for which it was constructed, should ban recovery which otherwise could be extended to an even more remote and less foreseeable natural person.

Since *Gasque v. Eagle Machine Co. Limited, supra,* lack of privity as a defense to a cause of action has been of questionable vitality in South Carolina. Today, we seek to still all whispers of its continued existence. The trial court did not err in failing to hold that JKT Company was barred from recovery due to absence of privity of contract with Celotex.

---

[3] See State by State Survey in 2 American Law of Products Liability, § 10.43 (2nd Ed. 1974); *Frumer & Friedman, Products Liability,* Chapter 3, pp. 3-7-3-24.1 (1979).

Celotex next contends the trial court erred in admitting certain evidence over its objection. We disagree.

Respondent and Easley produced eight documents prepared by Celotex employees, and conducted extensive cross-examination of Celotex's witnesses with respect to those documents' contents. Celotex contends these documents and the testimony relating thereto were irrelevant.

This evidence clearly showed Celotex's awareness of the problems it was experiencing with residual moisture in roofing materials at or about the time it manufactured the materials sold to Hardwick. We conclude this evidence constituted admissions which were decidedly relevant to the issue whether Celotex knew or should have known those materials were defective.

Celotex next asserts two of these documents were not properly authenticated and their admission constituted reversible error. This is without merit.

The first document was a reprint of an article appearing in a Celotex publication which was admitted into evidence. While its introduction into evidence without proper authentication may have been erroneous, *Williams v. Milling-Nelson Motors, Inc.,* 209 S. C. 407, 40 S. E. (2d) 633 (1946), we fail to see how it prejudiced Celotex when the publication from which it was reprinted was admitted into evidence without objection as to its authenticity. An error not shown to be prejudicial does not constitute grounds for reversal. *Darden v. Witham,* 263 S. C. 183, 209 S. E. (2d) 42 (1974); *General Motors Acceptance Corporation v. Herlong,* 248 S. C. 55, 149 S. E. (2d) 51 (1966).

The second document was a letter dated September 18, 1970, from a Celotex division manager to a Georgia roofing contractor admitting Celotex had supplied defective roofing materials to him. Russell testified he had

investigated a complaint of defective roofing materials at the subject job site in 1970, and discovered Celotex materials in use. We hold this testimony, coupled with the fact the letter bore the Celotex letterhead, was sufficient circumstantial evidence to establish the genuineness of the document. *State v. Hightower,* 221 S. C. 91, 105, 69 S. E. (2d) 363 (1952); 29 Am. Jur. 2d, Evidence, § 879. Accordingly, we conclude its admission was proper.

Celotex additionally claims error in the trial court's charge. We believe the trial court properly instructed the jury.

The trial court charged the substance of Celotex's requests on the issues of breach of implied warranty of merchantability, contributory negligence of respondent JKT Company, and sole negligence of Easley and Hardwick. Any objection by Celotex that the trial court failed to clear up the alleged confusion created by its earlier charges does not appear in the record and is deemed waived. *Thomas-McCain, Inc. v. Siter,* 268 S. C. 193, 232 S. E. (2d) 728 (1977); *Van Dolson v. Earles,* 234 S. C. 593, 109 S. E. (2d) 456 (1959).

Appellant Celotex's remaining exceptions regarding evidentiary rulings by the trial court are without merit, and are dismissed. The verdict against Celotex is affirmed.

Appellant Easley asserts the trial court erred in refusing to grant its motion for judgment N.O.V. after the jury exonerated the subcontractor Hardwick. We agree.

While it is correct Easley requested and received a ruling by the trial court that Hardwick was an independent contractor as a matter of law, this does not alter the fact that Easley, as general contractor, was incapable of committing independent acts of negligence or breach of warranty with respect to the defective roof. Easley's negligence, if any, could only be predicated upon the principal negligence of Hardwick, the party who actually performed the work.

Similarly, no warranties were extended by Easley which were not extended by Hardwick. As Hardwick's actions are the sole test of performance of warranty and negligence, his exoneration by the jury must therefore relieve Easley of any responsibility.

By its verdict against Celotex, the jury clearly concluded the roofing materials were defective when they arrived at the job site. As the general contractor's only connection with the roofing of the warehouse was the employment of Hardwick as the subcontractor to perform the work, Hardwick's exoneration by the jury should likewise relieve Easley from any liability. The trial court erred in failing to grant Easley's motion for judgment N.O.V. following the rendering of the logically inconsistent verdict.

The verdict against the appellant Celotex is affirmed, and the verdict against the appellant Easley Lumber Company is reversed.

Affirmed in part; reversed in part.

LEWIS, C. J., LITTLEJOHN and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.