JOHN P. MAILLET *vs.* ATF-DAVIDSON CO., INC.

Middlesex. December 6, 1989. - April 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Negligence*, Manufacturer. *Warranty. Evidence*, Relevancy and material-ity. *Consumer Protection Act*, Availability of remedy, Warranty.

The judge at a civil trial correctly excluded certain proffered evidence that was irrelevant or immaterial. [188-189]

In a civil action there was sufficient evidence for the jury to conclude that the defendant was negligent and had breached the implied warranty of merchantability, and there was sufficient evidence for the judge to con-clude that the defendant had violated G. L. c. 93A, § 2. [189-190]

In a products liability case, the plaintiff, although not a consumer nor in privity with the defendant, was entitled to recover under G. L. c. 93A, § 9. [190-192]

Personal injuries are compensable in a negligence claim brought under G. L. c. 93A, § 2. [192]

In a products liability case, negligence and breach of warranty consti-tuted unfair and deceptive acts or practices within the meaning of G. L. c. 93A, § 2. [193-194]

At the trial of a civil action, the judge properly exercised his discretion to award reasonable costs pursuant to G. L. c. 93A, § 9 (4). [194-195]

CIVIL ACTION commenced in the Superior Court Depart-ment on June 23, 1980.

The case was tried before *R. Malcolm Graham*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph D. Regan* for the defendant.

*Neil Sugarman* for the plaintiff.

*Richard P. Campbell, Timothy Wilton, & Kurt B. Gerstner*, for Product Liability Advisory Council, Inc., & an-other, amici curiae, submitted a brief.

ABRAMS, J. A jury awarded the plaintiff $100,000 in damages for the defendant's negligence and for the defendant's violation of an implied warranty of merchantability in the sale of a printing machine to the plaintiff's employer. A judge awarded the plaintiff attorney fees of $20,700 and costs of $8,641.52 pursuant to G. L. c. 93A, § 9. On appeal, the defendant argues that the judge erred in the exclusion of evidence and in the award of costs. We allowed the defendant's motion for direct appellate review. We affirm.[1]

We summarize the undisputed facts. At the time of the accident, the plaintiff was employed by Carlsberg Printers, Inc., and was operating a printing press manufactured by the defendant. The press had been manufactured with a safety device designed to prevent accidental injuries, but the device was removed shortly after the press was installed at Carlsberg. The plaintiff never saw any warning stickers on the machine, nor was he aware that the safety mechanism had been removed.

On April 19, 1980, the plaintiff was working with the press. He determined that the plate then in the press had to be changed. He stopped the press so that he could change the plate. When he was finished, he turned the press back on before removing his hand from the inside of the press. When the machine started up, his hand was crushed.

1. *Exclusion of evidence.* On the first day of trial, the plaintiff made a motion in limine to exclude evidence that beer was available on the premises of Carlsberg Printers, on the ground that there was no evidence that the plaintiff consumed any alcohol on the day of the accident. The judge allowed the motion, stating: "I have made inquiry as to whether or not during the course of the discovery there has been any person who was deposed, including the plaintiff, who had indicated that the plaintiff did in fact have a beer. My understanding is that there is no one who would say yes to any question." The defendant made a general objection.

---

[1]We acknowledge the assistance of amici Product Liability Advisory Council, Inc., and Motor Vehicle Manufacturers of the United States, Inc.

On the third day of trial, the defendant filed a motion for reconsideration of the judge's ruling. As grounds therefor, counsel for the defendant stated that he had telephoned a witness, Robert Harless, to inform him of the trial schedule and asked Harless whether "there were any substantial changes in the sworn testimony of his deposition." Harless, a former supervisor at Carlsberg, said that there were changes. The defendant's counsel informed the judge that Harless and another witness, Andrew Traylor, were now prepared to testify that the plaintiff "[h]ad at least two beers before his accident." The judge was inclined to exclude the testimony and declared that the eleventh-hour recantation was "the very thing the rules [of civil procedure] are designed to foreclose." Nonetheless, he allowed the motion to reconsider to the extent that he permitted the defendant's counsel to cross-examine the plaintiff on the subject of alcohol consumption. The plaintiff denied that he had been drinking on the job on the day of the accident.[2] The judge deferred a further ruling until the two witnesses were present.

On the fourth day of trial, the judge held a voir dire of the two witnesses. Robert Harless stated that he did not see the plaintiff drink any alcoholic beverage on the day of the accident. Harless said that he saw the plaintiff handle a beer can at some time during the day, but he did not know whether it was empty. He also did not know if the beer can could have been an empty one left near the plaintiff's work area by himself (Harless) or another employee. Andrew Traylor testified that he did not observe the plaintiff drinking on the day of the accident. Traylor did state, however, that other employ-

---

[2]The plaintiff pointed out during oral argument that hospital records, introduced at trial, contained no indication that the plaintiff had been drinking. These records indicate that the hospital staff administered Demerol to the plaintiff only fifteen minutes after the accident occurred. The plaintiff's point was that the hospital would not have administered Demerol to a patient who had been drinking. The plaintiff is correct in asserting that there was no mention of alcohol in the hospital records. There was, however, no testimony concerning the meaning of the records. Without such testimony, we do not consider the records.

ees drank beer during working hours and that once he had seen the plaintiff drinking a beer at work.

On the basis of this voir dire testimony, the judge ruled that further evidence about the plaintiff's drinking beer at Carlsberg was excluded. The judge stated, "I have heard all I am going to hear on this matter. It is not coming in." The defendant objected and now argues that this ruling was improper. We disagree.

Traylor's testimony on this issue was inadmissible. The drinking habits of other employees, and the fact that the plaintiff himself had once before at an unspecified time and date had a drink at work, were irrelevant. They did not "render the desired inference more probable than it would be without the evidence." *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). Moreover, "prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand." *Lataille* v. *Ponte*, 754 F.2d 33, 35 (1st Cir. 1985). Accord *Figueiredo* v. *Hamill*, 385 Mass. 1003, 1004 (1982); *Davidson* v. *Massachusetts Casualty Ins. Co.*, 325 Mass. 115, 122 (1949). Evidence that the plaintiff had once consumed a beer while at work was, therefore, irrelevant to prove that he had consumed a beer at work on the day of the accident.[3]

Harless's testimony also properly was excluded because it did not furnish a link in the chain of proof. See *Green* v. *Richmond, supra* at 59. Testimony about the beer can, without more, was insufficient to establish that the plaintiff had been drinking prior to the accident and therefore was impaired. This is particularly true because Harless admitted that he did not see the plaintiff drink any beer that day, that he did not know if he or another employee could have left the

---

[3]The defendant also contends that this evidence should have been admitted to impeach the plaintiff's credibility, because the plaintiff stated that neither he nor any other employee drank at work prior to the accident. These were collateral matters. It was properly within the discretion of the trial judge to exclude extrinsic evidence of collateral matters. *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982); *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1, 9 (1980); *Commonwealth* v. *Chase*, 372 Mass. 736, 747 (1977).

beer can there, and that he did not know whether the beer can was empty. The defendant was unable to link Harless's testimony at the voir dire hearing with any other evidence that could have permitted the jury to infer that the plaintiff had been drinking prior to the accident and was impaired. There was no error in the judge's ruling.

2. *Claim under G. L. c. 93A.* After the trial, the judge held a separate hearing on the plaintiff's claim under the consumer protection statute, G. L. c. 93A. See *Nei* v. *Burley*, 388 Mass. 307, 311-315 (1983). Cf. *Travis* v. *McDonald*, 397 Mass. 230, 234 (1986). After the hearing, the judge issued findings of fact and rulings of law. He concluded that the defendant was negligent[4] and had violated the implied warranty of merchantability. The judge determined that the breach of warranty constituted a violation of c. 93A, § 2.

The judge found that "the defendant breached its warranty of merchantability in that it failed to warn of dangerous conditions. The machine in its condition was not of merchantable quality. As a result, [the] plaintiff's hand became caught and crushed by the machine . . . ." The judge noted the jury's answers to special questions, which indicated that the plaintiff was unaware "that the product was defective and dangerous . . . ." The judge also took notice of the jury's conclusion that the defendant was negligent. These findings yield ample factual support for the judge's holding that the defendant had violated G. L. c. 93A, § 2.[5]

The defendant contends that, in this case, we should abandon the general rule that a breach of warranty constitutes a violation of G. L. c. 93A, § 2 (see section (3), *infra*), because (1) in a products liability case, a nonnegligent breach of war-

---

[4]The jury also concluded that the plaintiff was forty per cent comparatively negligent.

[5]The judge awarded costs and fees under c. 93A. A further award of damages for the plaintiff's injuries on the c. 93A claim, combined with the jury's $100,000 award on the breach of warranty claim, would have amounted to cumulative damages for the same injury. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 379 n.10 (1990); *McGrath* v. *Mishara*, 386 Mass 74, 85 (1982).

ranty should not fall under the general rule; (2) G. L. c. 93A does not provide a cause of action for a personal injury plaintiff who is not a consumer and not in privity with the defendant; and (3) the defendant's conduct was neither unfair nor deceptive.

(1) The defendant argues that, in a products liability case, liability should not be imposed automatically under G. L. c. 93A whenever a defendant has violated the warranty of merchantability. The defendant argues, essentially, that in some circumstances, liability might be imposed under G. L. c. 93A for breach of warranty even if the defendant was not negligent. That issue is not before us. The jurors concluded that the defendant was negligent, and the judge agreed with that conclusion. There was sufficient evidence for the jury and the judge to conclude as they did.[6] Thus, the only issues before us are whether the plaintiff has a cause of action under c. 93A and whether the defendant's negligence and breach of warranty constitute a violation of G. L. c. 93A, § 2.[7]

(2) The defendant argues that the plaintiff is not entitled to relief under G. L. c. 93A, § 9 (1988 ed.). This argument is premised on the contention that the plaintiff, an employee of the purchaser of the product, is neither a consumer nor in privity with the defendant. Section 9, however, no longer limits relief to consumers. It provides a cause of action to "[a]ny person, other than a person entitled to bring action under section eleven of this chapter [i.e., a business plaintiff], who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . ."[8]

---

[6]On appeal, the defendant rightly did not challenge the sufficiency of the evidence.

[7]The defendant argues that, to the extent that the Attorney General's regulation imposes G. L. c. 93A, § 2, liability automatically, the Attorney General has "arrogat[ed] excessive power to himself . . . ." Because we conclude that application of the regulation was proper in this case, we do not reach or decide this issue.

[8]The former version of § 9, as appearing in St. 1979, c. 72, § 1, would have supported the defendant's argument here. It provided that: "Any per-

See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671 (1983) (discussing the broad availability of relief under § 9); accord *Leardi* v. *Brown*, 394 Mass. 151, 158-159 (1985); *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 743 (1980).

Nor has a lack of privity between plaintiff and defendant previously barred recovery under c. 93A, § 9.[9] In *Van Dyke*, *supra*, for example, the plaintiffs, who had brought suit against a physician for malpractice, also brought suit against the physician's malpractice insurer for unfair claim settlement practices. We held that these claimants against the defendant insurer's insured were proper plaintiffs under § 9, even though the plaintiffs had no contractual relation whatsoever with the defendant insurer. In *Burnham* v. *Mark IV Homes, Inc.*, 387 Mass. 575 (1982), we concluded that because "[l]ack of privity . . . is no longer a defense" under the warranty provisions of the Uniform Commercial Code, G. L. c. 106, § 2-318, nonprivity plaintiffs could also main-

son who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (*c*) of said section two may, as hereinafter provided, bring an action in the superior court . . . ." Compare *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 81 (1977) (under the former version of § 9, only *purchasers*, not additional insureds, of defendant insurer's policies, could assert cause of action under c. 93A), with *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983) (claimants against defendant insurer's insured are proper plaintiffs under the present version of § 9). The present version of the statute provides no support for the defendant's contention that there should be no liability because the printing press was "not a consumer product."

[9]Lack of privity, the problem here, is to be distinguished from a situation in which no warranty arises because no sale, lease, or contract exists. Compare *Colter* v. *Barber-Greene Co.*, 403 Mass. 50 (1988) (employee could recover under breach of warranty theory for injuries caused by machine manufactured by defendant and sold to plaintiff's employer), with *Mason* v. *General Motors Corp.*, 397 Mass. 183 (1986) (no warranty existed where plaintiffs were mere bailees of allegedly unmerchantable product). See G. L. c. 106, § 2-318. Here, a warranty was created when the defendant sold the printing machine to the plaintiff's employer, Carlsberg.

tain an action under G. L. c. 93A in a products liability case. *Id.* at 581.[10]

The defendant further objects to the application of G. L. c. 93A to products liability cases involving personal injury. Unlike the former version of the statute, however, the present version no longer includes a requirement that the plaintiffs show a loss of "money or property." See note 8, *supra.* Section 9 provides a cause of action to "[a]ny person . . . who has been injured by another person's use" of an unfair or deceptive trade practice. We see no reason to exclude injury to the person from the category of injuries cognizable under G. L. c. 93A. See *Leardi* v. *Brown,* 394 Mass. 151, 158-159 (1985) (compensable injuries under c. 93A need not involve loss of money or property but include any "invasion of any legally protected interest of another"). See also *Keller Indus.* v. *Reeves,* 656 S.W.2d 221, 224 (Tex. Ct. App. 1983) (Texas's consumer protection statute, the Deceptive Trade Practices Act, reaches cases of strict products liability for personal injury). Moreover, c. 93A, § 2 (1988 ed.), directs that we are to "be guided by the interpretations given by the Federal Trade Commission" to § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1). The Federal Trade Commission has concluded that failure to warn of a defective or dangerous condition that could cause personal injury constitutes an "unfair" trade practice. See *Matter of International Harvester Co.,* 104 F.T.C. 949, 1064-1067 (1984).[11]

---

[10]The difference between *Burnham* v. *Mark IV Homes, Inc.,* and this case is that the consumer plaintiffs in *Burnham* were not in vertical privity with the defendant, while in this case, the plaintiff is not in horizontal privity with the defendant but is someone who uses or is affected by the warranted product. See *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.,* 404 Mass. 103, 107 n.4 (1989).

[11]We are unmoved by the defendant's observation that, under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301 et seq. (1982), liability for breach of warranty does not extend to personal injury. The MMWA was intended to supplement State regulation of warranties, not to limit State regulation. *Gorman* v. *Saf-T-Mate, Inc.,* 513 F. Supp. 1028, 1035 (N.D. Ind. 1981). Courts construing the limits of the MMWA have concluded that, because the States have traditionally handled implied

(3) The defendant's argument that it has done nothing unfair or deceptive in violation of G. L. c. 93A, § 2, also fails. The judge concluded that the defendant violated G. L. c. 93A, § 2, because of the defendant's negligence and the breach of the implied warranty of merchantability. Generally, a breach of warranty constitutes a violation of G. L. c. 93A, § 2. *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378-379 (1990); *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 235 (1984); *Burnham* v. *Mark IV Homes, Inc., supra* at 577; *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 821 (1982); *Linthicum* v. *Archambault*, 379 Mass. 381, 387 (1979); *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702 (1975).[12] The Attorney General, pursuant to G. L. c. 93A, § 2 (*c*), has promulgated a regulation providing that "[i]t shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty." 940 Code Mass. Regs. § 3.08 (2) (1986). The regulations specifically include the implied warranty of merchantability under the definition of "warranty." 940 Code Mass. Regs. § 3.01 (1986).

Moreover, "it is not a defense to a c. 93A claim that the defendant's conduct was negligent rather than intentional . . . ." *Linthicum* v. *Archambault, supra* at 388. "[N]either intent to engage in an unlawful act nor knowledge of its unlawfulness is required in order to establish liability." *Id.* at 388 n.12, quoting Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L.Q. 307,

---

warranty liability for personal injury, "Congress was content to let the question of personal injury products liability remain a matter of state-law causes of action . . . ." *Id.* In construing the MMWA, "there is a presumption against a statutory construction that would significantly affect the federal-state balance." *Boelens* v. *Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984). See *Cabot Corp.* v. *Baddour*, 394 Mass. 720, 722-723 (1985) (G. L. c. 93A may apply to practices or industries not subject to Federal Trade Commission regulation if those industries traditionally have been regulated by the Commonwealth).

[12]*Calimlim, supra*, and *Burnham, supra*, both involve breach of the implied warranty of merchantability.

314 (1969). See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 779-780 (1980) (Attorney General's regulations may proscribe even good faith business practices that could be unfair or deceptive).

3. *The reasonableness of attorney's fees and costs.* The trial judge concluded that the plaintiff was entitled to recover reasonable attorney's fees and costs under G. L. c. 93A, § 9 (4).[13] The judge stated that, "[h]aving had the opportunity to view, first hand, the ability of plaintiff's counsel, the nature and complexity of the issues and the length of the trial, plaintiff's requests cannot be said to be unreasonable." The judge then awarded fees of $20,700 and costs of $8,641.52. The defendant objects to this award because "[n]o breakdown as to how the legal fees or costs were arrived at was given to the court below." In its brief, however, the defendant confines its argument to the issue of costs; thus, it has waived any objection to the reasonableness of fees awarded. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

As far as costs are concerned, "reasonable expert witness fees should normally be recoverable in a c. 93A case in order to vindicate the policies of the act." *Linthicum* v. *Archambault*, 379 Mass. 381, 389 (1979). The defendant argues, however, that the court "had no basis for making a finding as to the reasonableness of the costs" and that witness fees, if those are included, should be awarded only in the discretion of the trial judge, rather than automatically. We believe that the judge properly exercised his discretion. The judge saw the plaintiff's expert, heard his qualifications, and heard parts of the depositions as they were read into the record and

---

[13]General Laws c. 93A, § 9 (4) (1988 ed.), provides that, "[i]f the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action. . . ."

used during the voir dire examinations.[14] From his observations at the trial, he could conclude that the figures submitted under oath by an attorney were reasonable.[15]

*Judgment affirmed.*

---

[14]In addition to the expert witness and depositions, there were twenty-four exhibits, including ten photographs and a hospital record.

[15]The judge made the award of costs on the basis of an affidavit submitted by the plaintiff's attorney. The record does not disclose any request by the defendant for a breakdown of cost figures. It would have been better practice, however, to have submitted a breakdown of the figures.