531 S.E.2d 917

**Jay H. REYNOLDS and Theresa H. Reynolds, Plaintiffs,**

**v.**

**The RYLAND GROUP, INC. and Ryland Homes, Defendants.**

**Paul C. Daugherty and Carol L. Daugherty, Plaintiffs,**

**v.**

**The Ryland Group, Inc. and Ryland Homes, Defendants.**

**No. 25118.**

Supreme Court of South Carolina.

Heard Sept. 21, 1999.

Decided May 8, 2000.

Max G. Mahaffee, of Grimball & Cabaniss, P.A., of Charleston, for Plaintiffs.

Walker Duvall Spruill and O. Carlisle Edwards, Jr., both of Turner, Padget, Graham & Laney, P.A., of Columbia, for Defendants.

FINNEY, Chief Justice:

This Court accepted this certified question in its original jurisdiction to determine if a subsequent purchaser can sue a builder/vendor under the South Carolina Unfair Trade Practices Act (SCUPTA).

*FACTS:*

Plaintiffs[1] filed an action in the United States District Court for the District of South Carolina–Charleston Division alleging the following cause of action against defendants (Ryland Group)[2]: breach of implied warranty, negligence, and violations of the SCUPTA. Plaintiffs are subsequent purchasers of homes built by the defendant. Plaintiffs discovered inter alia[3]

---

1. The plaintiffs are Paul C. Daugherty and Carol L. Daugherty (Daugherterys) who purchased a home from its original owners on January 10, 1997 which was built and sold by the defendant on May 13, 1993 and Jay H. Reynolds and Theresa H. Reynolds (Reynolds) who purchased a home from its original owners on May 31, 1996 which was built and sold by the defendant on January 27, 1993.

2. The defendant, Ryland Group, was not directly involved in the sale to the Daughertys or Reynolds.

3. Plaintiffs allege failure to address poor soils, building code violations, and unapproved modifications to the house plans after submitting the

cracks in the concrete slabs and alleged that the initial construction and development performed by the defendant is flawed. Defendant challenges the plaintiffs right to assert SCUPTA claims because of the plaintiffs remoteness from the alleged wrongdoing. The implied warranty and negligence claims are still pending before the United States District Court. This Court has agreed to answer the question certified by Judge David C. Norton of the United States District Court for the District of South Carolina–Charleston Division.

*CERTIFIED QUESTION*

Under South Carolina law, can Plaintiffs in a residential construction defects case sue Defendant builder, seller and developer under the South Carolina Unfair Trade Practices Act if Plaintiffs did not purchase their residences from Defendant but from the original homeowner more than three years after the initial sale?

*DISCUSSION*

The South Carolina Unfair Trade Practices Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C.Code Ann. § 39–5–20(a) (1985). Under S.C.Code Ann. § 39–5–140(a) (1985),

> [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39–5–20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

---

plans to Dorchester County building officials for approval and that the damages to the homes include cracked slabs and foundations, concrete of inadequate depths and strength, and decaying organics under the "footprint" of the houses.

There is no specific provision within the act which limits a cause of action to an immediate purchaser. However, plaintiffs failed to produce any cases directly on point and contend in their brief that Texas law supports the position which they urge this Court to adopt under SCUPTA citing *Barrett v. U.S. Brass Corp.*, 864 S.W.2d 606, (Tex.Ct.App.1993). In our opinion, plaintiffs' reliance on *Barrett* is misplaced. *Barrett* is neither persuasive nor helpful; in fact *Barrett* was overruled by the Texas Supreme Court in *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex.1996).

The Texas Supreme Court consolidated *Barrett v. United States Brass Corp.* and several other cases to determine if their legislature intended the upstream suppliers of raw materials and component parts to be liable under Texas' version of SCUPTA, known as DTPA, when none of their alleged misrepresentations reached the consumers. It found that no homeowners in the consolidated cases could recover from the defendant companies under DTPA because the alleged violations did not occur in connection with the homeowners' purchase of their homes. The court held that defendant's deceptive conduct must occur in connection with a consumer transaction. The court found U.S. Brass had no role in the sale of the homes to plaintiffs. The court also found that "rather than permit limitless upstream DTPA liability under these circumstances, the legislature more likely intended for consumers to seek DTPA recourse against those with whom they have engaged in a consumer transaction."

Plaintiffs ask the Court to hold the privity of contract is not required in a SCUPTA claim, by a subsequent purchaser from a builder/vendor. Plaintiffs recognize that the Court has taken a very active role in the construction area to protect innocent purchasers. The most noteworthy step has been the elimination of privity to protect an innocent purchaser who has invested his life savings from latent defects in a mobile society where it is foreseeable that more than the original owner will enjoy a home from a builder. *See Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980); *JKT Company, Inc. v. Hardwick*, 274 S.C. 413, 265 S.E.2d 510 (1980); and *Lane v. Trenholm Building Co.*, 267 S.C. 497, 229 S.E.2d 728 (1976).

Additionally, plaintiffs look to *Burbach v. Investors Management Corporation International*, 326 S.C. 492, 484 S.E.2d 119 (Ct.App.1997) to thwart contentions that it would be superfluous to have SCUPTA apply to construction cases where other causes of action exist. In *Burbach*, a former tenant of defendant brought an action seeking return of security deposit alleging conversion and violations of Residential Landlord and Tenant Act and South Carolina Unfair Trade Practices Act. The defendant in this case argued that SCUTPA did not apply because the contract between the parties was a private contract and that the SCRLTA provides an exclusive remedy. The court found that residential leases are things of value, directly affect the citizens of this state, and that the conduct of the landlords is capable of repetition. The court held that the evidence was admissible to prove the plaintiffs' SCUPTA claim. In our opinion, plaintiffs reliance on *Burbach* is misplaced since Burbach turns on the admissibility of evidence.

*CONCLUSION*

Although there is no specific provision within SCUPTA which limits a cause of action to an immediate purchaser, we answer the certified question in the negative. We realize that suing under SCUPTA can be a very attractive remedy because the statute provides that if the deceptive act is willful, then the plaintiff may recover treble damages. However, subsequent purchasers are not without remedies. The courts and legislature have paved the way to allow subsequent purchasers to bring causes of actions in tort, negligence and implied warranties.

CERTIFIED QUESTION ANSWERED

TOAL, MOORE, JJ., and Acting Justice WILLIAM T. HOWELL, concur.

BURNETT, J., dissenting in a separate opinion.

BURNETT, Justice:

I respectfully disagree. The question certified to us is purely one of statutory construction:

Under South Carolina law, can Plaintiffs in a residential construction defects case sue Defendant builder, seller and

developer under the South Carolina Unfair Trade Practices Act if Plaintiffs did not purchase their residences from defendant but from the original homeowner more than three years after the initial sale?

The majority acknowledges "there is no specific provision in the [South Carolina Unfair Trade Practices] Act which limits a cause of action to an immediate purchaser." It discusses the lack of cases on point, and concludes while nothing in the act limits a cause of action to an immediate purchaser, subsequent purchasers nevertheless may not sue under the SCUTPA.

The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998). In construing a statute, its words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin,* 308 S.C. 226, 417 S.E.2d 592 (1992).

The statute at issue reads:

Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages.

S.C.Code Ann. § 39–5–140(a) (1985). By construing the plain wording "any person" to mean "any person in privity with the builder" the majority effectually limits the statute's operation. Had the legislature intended to impose a limitation on the operation of the SCUTPA by imposing a privity requirement, it could easily have done so. This statute was intended to give additional protection to victims of unfair trade practices. *Young v. Century Lincoln–Mercury, Inc.,* 302 S.C. 320, 326, 396 S.E.2d 105, 108 (Ct.App.1989) *rev'd in part on other grounds,* 309 S.C. 263, 422 S.E.2d 103 (1992). The legislative intent to protect consumers is thwarted by the judicial imposition of further limitations on a plaintiff's ability to recover damages.

The majority relies on *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644 (Tex.1996). *Amstadt* held that up-

stream suppliers of component parts could not be held liable under Texas's Deceptive Trade Practices Act (DTPA) if the claimed violations did not occur in connection with the consumer transaction that gave rise to the claim. I do not find *Amstadt* persuasive on this question. *Amstadt* interprets a different statute, the DTPA, which contains very different statutory language than our SCUTPA. For example, the Texas statute specifically requires that a deceptive practice be "relied upon by a consumer to the consumer's detriment." Tex.Bus. & Com.Code Ann. § 17.50 (1987 & Supp.1999). Furthermore, even under the DTPA, "privity of contract is not required." *Id.* at 649. Finally, *Amstadt* dealt specifically with the liability of upstream manufacturers and suppliers of component parts, who "exercised no control over the manufacture and installation of the finished systems of the homes." *Church & Dwight Co. v. Huey*, 961 S.W.2d 560 (Tex.Ct.App. 1997). In contrast, the defendants here both built and sold the allegedly defective houses.

The Court should be very mindful of differences between the language of our act and those in other states. In *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.*, 836 S.W.2d 907 (Ky.Ct.App.1992), the Kentucky Court of Appeals interpreted Kentucky's Consumer Protection Act to require privity of contract based on statutory language limiting recovery to "[a]ny person who purchases or leases goods or services...." The court concluded the "language of the statute plainly contemplates an action by a purchaser against his immediate seller." *Id.* at 909. The court noted "[t]he legislature had the option of enacting a statute which allows persons other than purchasers with privity of contract to bring an action under the Consumer Protection Act," and cited the Massachusetts statute as an example of one not so limited. *Id.* The Massachusetts act, similarly to ours, permits recovery to "any person ... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [the consumer protection statute]."[1] In *Maillet v. ATF–Davidson Co.*, 407 Mass. 185, 552 N.E.2d 95 (1990), the Massachusetts court held lack of privity was no bar to

---

1. The Massachusetts act is broader than ours in that it permits recovery for personal injury, as well as loss of money or property. *Maillet v. ATF–Davidson Co.*, 407 Mass. 185, 552 N.E.2d 95 (1990)

recovery under the act. The court noted that the former version of the act, which, like Kentucky's, read "[a]ny person who purchases or leases . . ." supported the defendant's position, but the omission of the language "who purchases or leases" effectively eliminated the requirement of privity. *See id.* at 99.

South Carolina, through both its courts and legislature, has previously been in the vanguard of protecting consumers, particularly in the area of home construction. *See Terlinde v. J.F. Neely, Sr.,* 275 S.C. 395, 271 S.E.2d 768 (1980) (subsequent purchasers of home may sue builder in tort and contract), *JKT Co. v. Hardwick,* 274 S.C. 413, 265 S.E.2d 510 (1980) (statutory implied warranty of merchantability extends to corporate plaintiff not in privity with defendant), *Lane v. Trenholm Building Co.,* 267 S.C. 497, 504, 229 S.E.2d 728, 731 (1976) ("Our legislature continues to place South Carolina in the vanguard of consumer protection."). The General Assembly, in other consumer protection contexts, has evidenced its intent to provide the maximum protection to consumers of defective products. *See, e.g.,* S.C.Code Ann. § 36–2–318 (1976) ("A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section."). In *JKT Co.,* we stated in response to the defendant's argument § 36–2–318 only abolished the privity requirement as to "natural persons" that "we do not believe the doctrine of privity in South Carolina has sufficient vitality to permit its resuscitation by Celotex as a bar to JKT's recovery." *JKT Co.,* 274 S.C. at 417, 265 S.E.2d at 512. I am baffled by the majority's resurrection of the long dead privity requirement in light of these precedents and the legislature's omission of any language in the SCUTPA even suggesting its intent to limit recovery to persons in privity with the wrongdoer. Furthermore, imposing a privity requirement would bar suits for unfair or deceptive practices by competitors, which have previously been upheld. *See, e.g., Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 503 S.E.2d 483 (Ct.App.1998), *cert. denied* (April 22, 1999) (suit by competitor).

There are numerous limitations already in place on a plaintiff's ability to bring a SCUTPA suit, such as the requirements that an action be brought in a plaintiff's individual capacity (§ 39–5–140(a)) and that the plaintiff allege and prove the defendant's actions adversely affected the public interest. *See Daisy Outdoor Advertising Co. v. Abbott,* 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996) and cases cited therein. Moreover, the lack of a privity requirement in no way suggests that plaintiffs under the SCUTPA need not prove a causal connection between the deceptive practices and their injury. *See* § 39–5–140(a) (injury must occur "as a result of" the violation).

The majority appears to hold that subsequent purchasers are barred from suing under the SCUTPA simply because there are other remedies available. However, the conduct prohibited by the SCUTPA is not merely duplicative of that addressed by the law of torts, contracts, and warranties. *See Suminski v. Maine Appliance Warehouse, Inc.,* 602 A.2d 1173, 1174 (Me.1992) (violation of UTPA requires unfair or deceptive conduct, not merely failure to honor statutory warranties). I would hold that privity of contract is not a prerequisite to maintaining a cause of action under the SCUTPA. I express no opinion as to the merits of plaintiffs' SCUTPA claim.