THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Steve W. McConnell, Appellant,
v.
John Burry, Rabon Creek Watershed Conservation District of Fountain Inn, South Carolina,
T.H. Walker, Jr., Defendants,
Of whom John Burry is, Respondent.
 
 
 

Appeal From Greenville County
 Henry F. Floyd, Circuit Court Judge

Unpublished Opinion No. 2006-UP-320
Heard December 6, 2005  Filed August 18, 2006   

AFFIRMED IN PART; REVERSED IN PART

 
 
 
H.W. Pat Paschal, Jr., of Greenville, for Appellant.
W. Francis Marion, Jr., of Greenville, for Respondent.
 
 
 

PER CURIAM: Steven McConnell appeals the trial courts order granting John Burry summary judgment on McConnells causes of action for fraud, constructive fraud, negligent misrepresentation, negligent/reckless nondisclosure of land defects, fraudulent concealment, violation of the South Carolina Unfair Trade Practices Act, and negligence arising from a real estate transaction.  We affirm in part and reverse in part.     
FACTS
In August of 1976, Burry acquired 172 acres of land in Laurens and Greenville Counties.  In October of 1976, Burry executed an Easement for Construction and Impoundment in favor of Rabon Creek Watershed Conservation District on the property allowing for the construction of a dam and the impoundment of water.  
After construction of a dam and a lake (Lake Beulah), Burry subdivided the remaining property into lots.  In preparing the lots for sale, Burry hired surveyor T.H. Walker, Jr. to prepare a subdivision survey plat of the property.  Initially, Walker provided Burry with a plat containing a line labeled Flood Plane (sic) drawn across the numbered lots abutting the lake.  The line represented the elevation of the emergency spillway of the dam, 718 feet.  At Burrys request, Walker removed the line from the plat. Burry recorded the altered plat without the Flood Plane line. 
On August 21, 1990, Burry sold lot 14 to E.J. and Gail Neal by warranty deed.  About two years later, McConnell became interested in property surrounding Lake Beulah and called Burry to inquire about available lots.  Burry presented McConnell with the by-laws, property restrictions, and a copy of the recorded plat.  In October 1992, McConnell purchased lot 14 from the Neals.  McConnell applied for a building permit and began construction of his home in early 1994.  McConnells home was substantially complete by April 22, 1994.  
On August 26, 1995, McConnells property was flooded as the waters of Lake Beulah rose to five feet inside the first floor of McConnells house.  On September 6, 1995, Dave Demeris, from the Soil Conservation Service of the Federal Department of Agriculture, surveyed McConnells property.  Demeris flagged the level of the emergency spillway (718 feet) and the level of the easement (724 feet).  The level of the emergency spillway takes in the entire first floor of McConnells house.  McConnell cannot currently obtain a building permit to repair his home because of its location within the flood plain.  
In his complaint filed December 8, 1995, McConnell asserted claims against Burry, Rabon Creek, and other defendants alleging various causes of action arising out of the damage to his property and inability to rebuild.  McConnell alleged Burrys failure to disclose the existence of a flood plain on the subject property gives rise to claims against Burry for fraud, constructive fraud, negligent misrepresentation, negligent/reckless nondisclosure of land defects, fraudulent concealment, breach of fiduciary duty, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), negligence, breach of warranty of merchantability, breach of warranty of fitness, breach of express warranty, and breach of contract.  McConnell also sought an injunction requiring Burry to protect against the damages resulting from the Rabon Creek easement.  McConnells lawsuit was consolidated with similar individual actions by his neighbors.  
In 1997, the trial court granted partial summary judgment as to the existence of the easement as initially executed and filed.  After a bench trial, the court found in favor of McConnell and his neighbors.  On appeal, this court held that the easement was clear and unambiguous, allowing Rabon Creek to flood the land surrounding the lake up to the top of the dam (an elevation of 724.5 feet), and the Homeowners possessed actual or constructive notice of the easement.  Binkley v. Rabon Creek Watershed Conserv. Dist. of Fountain Inn, 348 S.C. 58, 558 S.E.2d 902 (Ct. App. 2001), cert. denied (Oct. 23, 2002).  
On remand, the trial court granted summary judgment to Burry on all of McConnells causes of action on the merits and found McConnells claims were barred by the statute of limitations.  The court subsequently denied McConnells motion to alter or amend the judgment.  This appeal followed.       
STANDARD OF REVIEW
To obtain summary judgment, the moving party must demonstrate there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Wilson v. Moseley, 327 S.C. 144, 146, 488 S.E.2d 862, 863 (1997).  In deciding a motion for summary judgment, the court must view the evidence and the inferences that can be drawn therefrom in the light most favorable to the non-moving party.  Id.  Summary judgment should not be granted even when there is no dispute as to the evidentiary facts, if there is a dispute as to the conclusions to be drawn therefrom.  Laurens Emergency Med. Specialists, P.A. v. M.S. Bailey & Sons Bankers, 355 S.C. 104, 108-09, 584 S.E.2d 375, 377 (2003). 
LAW/ANALYSIS
I.  Fraud, Constructive Fraud, Negligent Misrepresentation, and Negligence 
McConnell argues the trial court erred in granting summary judgment on his causes of action for fraud, constructive fraud, negligent misrepresentation, and negligence.  We agree. 
To prove an action for fraud, the plaintiff must establish the following elements:

1) a representation; 2) its falsity; 3) its materiality; 4) knowledge of its falsity or a reckless disregard of its truth or falsity; 5) intent that the representation be acted upon; 6) the hearers ignorance of its falsity; 7) the hearers reliance on its truth; 8) the hearers right to rely thereon; and 9) the hearers consequent and proximate injury.  Failure to prove any one of these elements is fatal.

Florentine Corp. v. PEDA I, Inc., 287 S.C. 382, 385-86, 339 S.E.2d 112, 113-14 (1985)(citations omitted).  
To establish constructive fraud, the plaintiff must establish all of the elements of actual fraud except the element of intent.  Ardis v. Cox, 314 S.C. 512, 516, 431 S.E.2d 267, 269 (Ct. App. 1993). 
The plaintiff must establish the following elements to establish liability for negligent misrepresentation: 

1) the defendant made a false representation to the plaintiff; 2) the defendant had a pecuniary interest in making the representation; 3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; 4) the defendant breached that duty by failing to exercise due care; 5) the plaintiff justifiably relied on the representation; and 6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

Sauner v. Pub. Serv. Auth. of South Carolina, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003).
Finally, for a negligence claim, the plaintiff must establish: 1) a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty by a negligent act or omission; and 3) damage proximately resulting from the breach of duty.  Rickborn v. Liberty Life Ins. Co., 321 S.C. 291, 300, 468 S.E.2d 292, 298 (1996).  
A non-disclosure becomes fraudulent concealment when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction.  Lawson v. Citizens & S. Natl  Bank of S.C., 259 S.C. 477, 481-82, 193 S.E.2d 124, 126 (1972).  The seller of real property has a duty to disclose material facts to the purchaser [w]here material facts are accessible to the [seller] only and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser.  Lawson, 259 S.C. at 485, 193 S.E.2d at 128.    
The right to rely must be determined in light of the plaintiffs duty to use reasonable prudence and diligence under the circumstances in identifying the truth with respect to the representations made to him.  Florentine Corp., 287 S.C. at 386, 339 S.E.2d at 114.  One who has knowledge of the truth or the means by which he could acquire such knowledge with reasonable diligence cannot claim to have been misled.  Binkley v. Rabon Creek Watershed Conserv. Dist. of Fountain Inn, 348 S.C. 58, 71, 558 S.E.2d 902, 908 (Ct. App. 2001), cert. denied (Oct. 23, 2002).  The determination of what constitutes reasonable diligence and prudence must be made on a case by case basis. 
Slack v. James, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005).  As a general rule, questions concerning reliance and its reasonableness are factual questions for the jury.  Id.  
This court recently affirmed the trial courts grant of summary judgment on similar claims by McConnells neighbors, John and Janice LoPresti against Burry.  LoPresti v. Burry, 364 S.C. 271, 612 S.E.2d 730 (Ct. App. 2005).  The trial court dismissed the Loprestis claims based on a finding that they were charged with constructive notice of the flood easement.  This court found nothing in the record to support the Loprestis argument that they justifiably relied on the absence in the plat of the dotted lines showing the flood plain.  We found no evidence suggesting the altered plat induced the LoPrestis not to make a complete review of the public records or request a detailed survey of the property before purchasing.  We considered the LoPrestis argument that the trial court erred in finding Burry was not required to disclose the flood easement and other arguments and concluded, The fact that the LoPrestis had constructive notice of the easement and the absence of any special relationship between the LoPrestis and . . . Burry . . . that would require disclosure of a matter of public record are dispositive of these arguments.  LoPresti, 364 S.C. at 278, 612 S.E.2d at 733-34.     
It is undisputed McConnell, like the LoPrestis, had constructive notice of the flood easement.  See Binkley, 348 S.C. at 68, 558 S.E.2d at 907 (ruling McConnell and neighbors had actual or constructive notice of the flood easement).  However, on appeal McConnells claims against Burry are not based on concealment of the easement, but rather concealment of the flood plain line and McConnells inability to rebuild his home.  This flood plain line constitutes a separate and distinct legal barrier to McConnells ability to rebuild.[1]  Pat Webb with the Greenville County Building Authority testified that in order for McConnell to receive a building permit, the living area, all live mechanical systems including ductwork, and all live electrical systems in the house would have to be two feet above the hundred-year flood line. 
Burry had a legal duty to disclose the location of the hundred year flood line.  Webb testified the countys Floodplain Management Regulations require developers to calculate base flood elevation data and provide that information to the county.  She explained that if Burry had received information from his surveyor that the property that was being subdivided was in a special flood hazard area, Burry would have been required to submit base flood elevation data to the county. 
A false representation made to the public in general may form the basis for liability for an individual.  37 Am.Jur.2d Fraud and Deceit § 111 (2001).  [O]ne who intends to defraud the public or a particular class of persons is deemed to have intended to defraud every individual in that class who is actually misled.  Id.  This principle applies where a party has sustained damages as a result of relying upon false information contained in a report required by statute to be filed with a public official.  37 Am.Jur.2d Fraud and Deceit § 112 (2001).  Furthermore, the person furnishing false information in the report is liable to one injured by reliance on the report if the maker of the report is requested to give information and refers the inquirer to the report for that information.  Id.  Thus, Burrys nondisclosure of the flood line to the county may be actionable by McConnell.  
As Burry had a duty to disclose the existence of the flood line on McConnells property, this case hinges on whether McConnell had a right to rely on any representation made by Burry.  We find there is conflicting evidence on whether through the use of reasonable diligence McConnell could have discovered the flood line.  The record includes evidence of several warning signs that a jury could consider to have put McConnell on notice to make further investigations.  Not only was McConnells property next to a lake, but also, a duly recorded, unambiguous flood easement encumbered McConnells property.  In addition, a real estate appraisal obtained April 22, 1994, informed McConnell the appraisers were unable to determine exact location of [property] on attached flood map but believed . . . that at least the rear portion of the lot is in a flood zone due to the adjacent lake.  
However, McConnell received assurances his house was not in the flood plain.  In May 1994, McConnell rolled a construction loan into a mortgage and was given a Notice to Borrower of Special Flood Hazard Area by NationsBank.  The bank informed McConnell the flood hazard insurance requirement would be waived if a survey indicated no flood hazard existed and/or insurance covered any flood hazard.  McConnell hired surveyor John Montgomery to perform a survey in December 1994.  Montgomerys survey indicated improvements on the property were not in a flood plain.[2]  McConnell also attempted to obtain flood insurance from State Farm Insurance.  The State Farm agent told McConnell that his house was not in a flood plain.  When McConnell informed the bank of the survey and insurance information, the bank waived the special flood hazard insurance requirement.  
Viewing the evidence in the light most favorable to McConnell, we hold a jury could reasonably conclude McConnell was justified in relying on Burrys failure to disclose the existence of the flood plain line, either on the plat or by filing the information with the County.  Accordingly, we find the trial court erred in granting summary judgment on the claims of fraud, constructive fraud, negligent misrepresentation, and negligence.  
II.  Negligent/Reckless Nondisclosure of Land Defect 
McConnell argues the trial court erred in finding that his negligent representation claim for land defects should be dismissed because of a failure to show that McConnell showed bodily harm, the error being that there is no bodily harm requirement.  He asserts, South Carolina recognizes the tort of negligent representation and the only requirement for damages is that the plaintiff suffers pecuniary loss.  It appears from his brief that McConnell is only seeking damages for negligent misrepresentation and is not asserting a separate tort of  negligent/reckless nondisclosure of land defects.  A showing of physical harm is not a requirement of a claim for negligent misrepresentation.  
III.  South Carolina Unfair Trade Practices Act
McConnell asserts Burrys alleged misrepresentations violate the South Carolina Unfair Trade Practices Act (SCUTPA).  We disagree.
In  Reynolds v. Ryland Group, Inc., 340 S.C. 331, 335, 531 S.E.2d 917, 919 (2000), the supreme court considered the certified question:  Under South Carolina law, can Plaintiffs in a residential construction defects case sue Defendant builder, seller and developer under the South Carolina Unfair Trade Practices Act if Plaintiffs did not purchase their residences from Defendant but from the original homeowner more than three years after the initial sale?  Id. at 333, 531 S.E.2d at 918.  The court ruled:

Although there is no specific provision within SCUPTA which limits a cause of action to an immediate purchaser, we answer the certified question in the negative.  We realize that suing under SCUPTA can be a very attractive remedy because the statute provides that if the deceptive act is willful, then the plaintiff may recover treble damages.  However, subsequent purchasers are not without remedies.  The courts and legislature have paved the way to allow subsequent purchasers to bring causes of actions in tort, negligence and implied warranties.

Id. at 335, 531 S.E.2d at 919-20.  
As the supreme court has ruled that a subsequent purchaser may not sue the developer under the SCUTPA, we must agree with the trial court that McConnells claim under the SCUTPA fails as a matter of law.  
IV.  Statute of Limitations 
McConnell argues the trial court erred in finding his claims were barred by the statute of limitations.  We agree. 
McConnells claims are governed by the three-year statute of limitations.  S.C. Code Ann. § 15-3-530(5) (2005).  Under the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct.  S.C. Code Ann. § 15-3-535 (2005);  Dean v. Ruscon Corp., 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996).

The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.  The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.  

Moriarty v. Garden Sanctuary Church of God, 341 S.C. 320, 328-29, 534 S.E.2d 672, 676 (2000) (citations omitted).
The statute of limitations is triggered not just by knowledge of an injury but by knowledge of facts, diligently acquired, sufficient to put an injured person on notice of the existence of a cause of action against another.  Id. at 329, 534 S.E.2d at 676.  The determination of when the statute of limitations began to run is a question of fact for the jury when the parties present conflicting evidence.  Id.    
As we held above, the record contains conflicting evidence of whether McConnell could have and should have discovered the existence of the flood plain line with due diligence.  A jury could reasonably determine the statute of limitations did not begin to run until McConnell discovered Burrys concealment of the flood plain line.  Thus, we find the trial court erred in determining the McConnells claims are barred by the statute of limitations.      
CONCLUSION
We hold the trial court erred in granting summary judgment to Burry on McConnells claims for fraud, constructive fraud, negligent misrepresentation, and negligence.  We hold the court correctly held McConnells claim under the SCUTPA fails as a matter of law.  Accordingly, the order of the trial court is 
 AFFIRMED IN PART AND REVERSED IN PART.
 HEARN, C.J.,  and HUFF and BEATTY, JJ., concur. 

[1] McConnell settled with Rabon Creek by entering into an inconsistent use agreement.  Thus, the only bar to construction now is the flood line.  
[2] However, every survey, including McConnells survey by Montgomery, noted the level of the emergency spillway was 718, which is where Walker and Demeris placed the flood plain line.  This level covers McConnells structure.