Troy, J.
This is an action brought by the plaintiff, The Company Theatre, Inc. (Company Theatre), against the defendant, Keystone Elevator Company, Inc. (Keystone), arising out of the sale, delivery, installation and repair of an exterior wheelchair lift at the Company Theatre’s place of business. In its complaint Company Theatre sets forth several causes of action, including rescission and breach of contract, breach of warranty and unfair acts or practices (G.L.c. 93A). A jury-waived trial was held before this judge on December 9, 2003. At the trial, Zoe Bradford, the president of Company Theatre, Robert Graziosi (Graziosi), Company Theatre’s maintenance supervisor and project manager, and William Bohnbach (Bohnbach), the president of Accurate Elevator and Lift Company (Accurate) testified as witnesses for the Company Theatre and Brian Haggerty (Haggerty), the principal of Keystone, testified for Keystone.
The court finds that the following evidence adduced at the trial is credible.
Company Theatre is a non-profit Massachusetts corporation with a principal place of business located at 30 Accord Park Drive, Norwell, Massachusetts. Keystone is a Massachusetts business corporation with a principal place of business located at 390 Water St., Quincy, Massachusetts.
In the spring of 1997 Company Theatre contacted Keystone for the purpose of acquiring a new exterior wheelchair lift. Its old wheelchair lift, which had been in place since 1984, was not user friendly and was experiencing malfunctions. Company Theatre wanted a new lift to improve handicap access to its theatre facility located in Norwell, Massachusetts. After reviewing Company Theatre’s needs and inspecting the site of the proposed installation, Keystone submitted to Company Theatre its “Quotation Proposal” dated April 4, 1997. In that proposal Keystone would “furnish and install one (1) PAL EN (P) exterior wheelchair lift at . . The price quoted by Keystone was $18,000. Company Theatre relied on Keystone’s expertise and judgment regarding the furnishing and installation of wheelchair lifts in general, and on Keystone’s particular knowledge regarding the specific needs of Company Theatre for an exterior wheelchair lift. Company Theatre entered into a contract with Keystone for the furnishing and installation of a wheelchair lift.
Also relying on Keystone’s expertise, Company Theatre agreed with Keystone’s proposal to move the location of the wheelchair lift so as to allow for its installation immediately abutting an exterior wall to provide greater stability. The contract, dated August 19, 1997, incorporated by reference the terms of Keystone’s April 4, 1997 proposal and provided for a completion date of December 31, 1997. The contract did not provide any disclaimers or limitations regarding the weather resistance of the subject elevator.
After the contract was entered into, Keystone submitted an order to Concord Elevator (Concord), the manufacturer, for fabrication of the wheelchair lift in accordance with Keystone’s proposal of April 4, 1997 and its contract with Company Theatre of August 19, 1997. After completion of fabrication, the wheelchair lift was delivered to the Company Theatre’s site and installed by Keystone.
After installation was completed, a state inspection was performed and an inspection certificate was issued to Company Theatre. That inspection was limited to a determination of whether the lift was operating on the date of the inspection. It was soon apparent that the lift was not properly protected from the elements as was necessary for an exterior lift. The service log maintained by Grazioso and the service call records of Keystone show that shortly after installation, the elevator was malfunctioning due to wet circuits. In particular, the lift suffered from numerous interruptions in service as a result of moisture collecting on switches and contact pads. Repeated service calls by Keystone failed to correct this problem, and as early as January of 1998 rusting was observed on the lift’s contacts. In addition, after the unit’s dome blew off, it cracked in several places during a storm in May of 1998. It was observed at that time that the dome had originally been installed using only a bead of silicone to secure it to the unit, and not the tapping screws which the design called for.[1] Rather than replacing the cracked dome after this event, Keystone attempted to repair and reinstall the dome, further worsening the unit’s exposure to water and moisture because the cracks on the dome continued to leak water into the mast and platform.
From the date installation of the unit was completed through October of 1998, the wheelchair lift suffered repeated service interruptions which required service calls to deal with wet contacts and switches, replace blown fuses and repair circuit boards, replace sticking locks, and apply silicone to attempt to provide weather protection. Despite repeated service visits and repair *559 attempts by Keystone, the unit continued to suffer an unacceptable level of service interruptions. Although these service calls were initially performed by Keystone without charge for approximately one year, Keystone began billing Company Theatre for them in September 1998.
After Keystone began to bill Company Theatre for the service calls and because of the continued problems with the wheelchair lift, Company Theatre contacted Concord in November of 1998 to request assistance. Concord made arrangements for Accurate to conduct an inspection and evaluation of the wheelchair lift. Bohnbach credibly testified at trial to the problems with the wheelchair lift and what was needed to correct them. According to Bohnbach, Accurate determined that the unit had not been installed with the exterior weather protection package which included a protective back panel, gasketing and a heating element at the fluid reservoir to warm the oil which should have been provided by Keystone in keeping with the unit’s location and consistent with Keystone’s proposal of April 4,1997. Instead, the lift was installed by Keystone in an exterior location without provision for appropriate weather protection causing the chronic weather-related interruptions in service summarized above. Accurate submitted its quote to perform repairs to correct this situation for a cost of $5,053.00. These repairs were completed at Company Theatre’s expense. Accurate also determined that the unit had not been installed properly and was out of plumb.[2] This caused the unit to rub on both sides and then shut down. On February 2, 1999, Accurate submitted a proposal to repair this defect for a price of $1,160.00. The work has been performed by Accurate for that price. Finally, in order to provide further weather protection to the unit, it was determined by Accurate that construction of a shed over the unit was necessary. This work was completed by Kris Larsen Ltd. at a cost to Company Theatre of $2,995.60.
Brian Haggerty, the principal of Keystone, testified at trial that he had advised Company Theatre prior to the lift’s installation that a shed over the unit was needed to protect it from the weather. The court does not accept this testimony as credible. The court further finds that Keystone is responsible for the cost of the shed so that the lift Keystone recommended and improperly installed will be protected from the elements. Company Theatre is entitled to be reimbursed for this expense.
Company Theatre served a c. 93A demand letter on Keystone which cited relevant Massachusetts regulations, detailed the alleged unfair or deceptive acts or practices of Keystone and demanded a reasonable offer of settlement. Keystone responded to the letter but its response failed to make a settlement offer. Instead, it demanded that Company Theatre pay its past due bills of $931.37 for service callbacks.
The court does not find that Company Theatre is entitled to rescission of the contract in that the testimony at trial of Graziosi reflects that the wheelchair lift is operating properly since the repairs were completed by Accurate and the shed was constructed.
Keystone breached its contract with Company Theatre by supplying a wheelchair lift that was not suitable for exterior use as called for by its contract with Company Theatre, and then installing it negligently so that it continually malfunctioned. Keystone had reason to know that Company Theatre needed a wheelchair lift that would operate while exposed to outdoor weather conditions. Keystone further had reason to know that Company Theatre would rely upon and did rely upon Keystone’s skill or judgment in selecting a lift that was suitable for that purpose. Keystone violated implied warranties of merchantability and fitness for a particular purpose by selecting and installing a lift that was not fit for exterior use as installed by Keystone. See Fernandes v. Union Bookbinding Co.; Ionics, Inc., 400 Mass. 27, 34 (1987); G.L.c. 106, §§2-315, cmt. 1; Back v. Wickes Coal, 375 Mass. 633 (1978).
Keystone’s breach of contract and breach of warranties in these circumstances amounted to unfair acts and practices toward Company Theatre in violation of G.L.c. 93A. See Maillett v. ATF-Davidson Co., 407 Mass. 185, 192-94 (1990). Keystone further violated G.L.c. 93A when it installed the wheelchair lift without the necessary exterior weather package, installed the lift negligently and then willfully billed Company Theatre for repair attempts that did not identify or correct the problems and should not have been necessary.
Company Theatre is entitled to recover the $6,213.00 it paid to Accurate and the $2,995.60 it paid to Kris Larsen Ltd., as well as remedies provided by G.L.c. 93A.
ORDER
For the aforementioned reasons, it is ORDERED that a judgment will enter for Company Theatre in the amount of $9,208.60 for the costs incurred by Company Theatre, doubled pursuant to G.L.c. 93A for a total of $18,417.20, and reasonable attorneys fees pursuant to G.L.c. 93A. Plaintiff shall file a request for attorney fees, to include backup time records, within 21 days. Defendant shall have 14 days thereafter to file an opposition, if any, to that request.

At the trial, Haggerty testified that Keystone did install the dome with the self-tapping screws. However, in response to Company Theatre’s 93A letter, Keystone stated that the self-tapping screws were not required. The court finds as a fact that Keystone did not use the required screws to secure the dome.

Keystone also failed to properly install the emergency lowering cable for the lift.